# EXHIBIT 22

Erik M. Helbing, Esq.
HELBING LAW, LLC
1328 Second Ave.
Berwick, PA 18603
570-498-5544 (phone)
570-371-5445 (telecopy)
Attorney for Defendant, Amos Financial, LLC

IN THE UNITES STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| JAMES TEPPER and ALLISON TEPPER | : | | |
| Plaintiffs | : | No. | 15-cv-5834-JCJ |
| | : | | |
| v. | : | | |
| | : | | |
| AMOS FINANCIAL, LLC | : | | |
| Defendant | : | | |

### DEFENDANT'S RESPONSES TO THE PLAINTIFFS' FIRST SET OF INTERROGATORIES

AND NOW, comes the Defendant, Amos Financial, LLC, by and through the undersigned, who hereby responds to the Plaintiffs' First Set of Interrogatories as follows:

### GENERAL OBJECTIONS

1. Amos Financial, LLC, objects to the Plaintiff's Interrogatories to the extent they are vague, overly broad, unduly burdensome, and/or beyond the scope of that permitted under the applicable Rule of Civil Procedure.

2. Amos Financial, LLC, objects to the Plaintiff's Interrogatories to the extent they seek information that is not relevant to the litigation.

3. Amos Financial, LLC, objects to the Plaintiff's Interrogatories to the extent they seek information not reasonably calculated to lead to the discovery of admissible evidence.

4. Amos Financial, LLC, objects to the Plaintiff's Interrogatories to the extent the seek information which are protected from discovery by the attorney-client privilege, the attorney-work product doctrine, or material which are otherwise privileged and/or immune from discovery.

5. Amos Financial, LLC, objects to the Defendant's Interrogatories to the extent they relate or require the production of documents, writing, records or publication available to the Plaintiffs in the public domain.

6. Amos Financial, LLC, objects to the Defendant's Interrogatories to the extent they are not limited to a reasonable timeframe governing the requested information.

7. Each of the above objections are incorporated into each Response below and none are waived by virtue of Amos Financial's Responses.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

1. Identify all persons who participated, in any capacity, in responding to these Interrogatories and state the capacity in which in person participated. In your answer, identify:
    a. Each person's name, employer, job title, and role in this regard
    b. Each person's current home and work address; and
    c. The specific interrogatories that each person helped answer or consulted on the answer.

**RESPONSE:** **OBJECTION: Amos Financial, LLC, objects to this Interrogatory insofar as it seeks the home addresses of the parties inquired into. The aforesaid information is irrelevant to the Teppers' cause of action against Amos Financial, LLC. Furthermore, all the persons identified below can be reached at their business address. In the event any of the individuals identified below are no longer reachable at the address listed by their name the response to this Interrogatory will be amended.**

**OBJECTION: Amos Financial, LLC, further objects to the extent this interrogatory inquiries into information protected by attorney-client privilege and/or the attorney work product doctrine.**

**Erik M. Helbing, Esquire, Helbing Law, LLC, Local Counsel for Amos Financial, LLC, 1328 Second Avenue, Berwick, PA, 570-498-5544. Provide legal counsel and advice as to the Defendant's responses and/or objections to the Interrogatories.**

Brian C. Donegan, Esquire, Amos Financial, LLC, General Counsel and Chief Financial Officer for Amos Financial, LLC, 3330 Skokie Valley Road, Suite 301, Highland Park, IL 60035, 847-433-2600. Provide legal counsel and advice as to the Defendant's responses and/or objections to the Interrogatories.

Nareg Korogluyan, Operations Manager for Amos Financial, LLC, 3330 Skokie Valley Road, Suite 301, Highland Park, IL 60035, 847-433-2600. Provide background and information concerning his interactions with the Teppers.

John Carroll, Esquire, Associate General Counsel, for Amos Financial, LLC, 3330 Skokie Valley Road, Suite 301, Highland Park, IL 60035, 847-433-2600. Provide background and information concerning his interactions with the Teppers.

2. Identify all persons, natural or artificial, that you believe have knowledge or information about the subject matter of the present action, and, for each, describe the knowledge or information you believe that person to have.

**RESPONSE:** Nareg Korogluyan, 3330 Skokie Valley Road, Suite 301, Highland Park, IL 60035, 847-433-2600. Information concerning his interactions with the Teppers.

John Carroll, Esquire, 3330 Skokie Valley Road, Suite 301, Highland Park, IL 60035, 847-433-2600. Information concerning his interactions with the Teppers.

Brian C. Donegan, Esquire, 3330 Skokie Valley Road, Suite 301, Highland Park, IL 60035, 847-433-2600. The business practices of Amos Financial, LLC.

John Spandorfer, M.D., 833 Chestnut Street, Suite 701, Philadelphia, PA 19107, 215-955-6180. The impact the alleged conduct of Amos Financial, LLC's employees had on the physical and/or mental health of the Plaintiff, James Tepper.

James Tepper, 2111 Spring Garden Street, Philadelphia, PA. His interactions with representatives of Amos Financial, LLC. His general health condition both prior to and after the Defendant's alleged violation of the debt collection statutes.

**Allison Tepper, 2111 Spring Garden Street, Philadelphia, PA.** Her interactions with representatives of Amos Financial, LLC. Her general health condition both prior to and after the Defendant's alleged violation of the debt collection statutes.

3. Identify all present and past employees and agents of Amos who were involved in the purchase of the loan package that included the Tepper Loan from the FDIC.
   **RESPONSE: OBJECTION: Amos Financial LLC objects to the interrogatory in that it is vague and unclear what is meant by "involved in the purchase of the loan package".**

   **Without waiving the objection, Amos Financial LLC states that Ohannes Korogluyan, Manager of Amos Financial LLC and Nareg Korogluyan conducted the due diligence on the loan package and executed documents on behalf of Amos Financial LLC. Brian C. Donegan and John Carroll closed the transaction with the FDIC.**

4. Identify all communications between Amos, its employees, or its agents with the Teppers, including, but not limited to, communications concerning the Tepper Loan and/or the Tepper Mortgage.
   **RESPONSE:** Please see Exhibits C-H attached to the Defendant's Initial Disclosures.
   Additionally, in early November 2014, Mr. Tepper contact local counsel for the Defendant, Erik M. Helbing, Esquire, who, after providing Mr. Tepper with the Defendant's telephone number, advised Mr. Tepper to contact the Defendant directly with any questions.
   Additionally, on or about April 6, 2015 there were telephone calls between the parties. *

5. Identify all communications involving Amos employees and/or Amos agents concerning the Tepper Loan and/or Tepper Mortgage, including, but not limited to, the status of the Tepper Loan and the amounts of principal and interest allegedly due on the Tepper Loan.
   **RESPONSE:    OBJECTION: Amos Financial LLC objects to the interrogatory to the extent this interrogatory inquires into information protected by attorney-client privilege and/or the attorney work product doctrine. Amos Financial LLC, further objects to this request on the**

grounds that communications between Amos Financial LLC employees and its legal department are covered by the attorney client privilege. Amos Financial LLC further objects to this request on the grounds that it calls for material that was prepared in anticipation of litigation for Case No. 03302 in the Court of Common Pleas of Philadelphia County, First Judicial District of Pennsylvania, entitled Amos Financial LLC vs. Tepper, et al., which is pending, and is therefore privileged from disclosure.

OBJECTION: Amos Financial LLC further objects that a request for "all communications" is overbroad, unduly burdensome requests information that is not relevant and not calculated to lead to relevant or admissible evidence.

Without waiving the objections, lease see Exhibits A-O to the Defendant's Initial Disclosures.

Additionally without waiving the objections, Amos Financial LLC states:

On or about 6/5/13 Ohannes Korogluyan instructed John Carroll to mail the letter dated 6/5/13, which notified the borrowers of the status of their loan.

On or about 7/24/13, Ohannes Korogluyan instructed John Carroll to warn the borrowers with the letter dated 7/24/13, that if they failed to bring their account current within 30 days of the date of the letter that Amos Financial LLC would declare their loan to be in default, and that if a default was declared the interest rate under the loan would be increased by an additional 5% to 9.49%.

On or about 9/20/13, Ohannes Korogluyan determined that Amos Financial LLC would declare a default and increase the interest rate to 9.49% effective as of 9/20/13, and he instructed John Carroll to mail the letter dated 9/20/13.

On or about Erik Helbing 12/8/14 forwarded a letter from James Tepper dated 11/28/14.

On or about 12/9/13, John Carroll asked Erik Helbing to forward the following documents to James Tepper: letter from the FDIC dated 3/23/13, letter dated 6/5/13, letter dated 7/24/13, letter dated 9/20/13, and the payment history. John Carroll told Erik Helbing to let James Tepper know that he could contact Nareg Korogluyan.

On 4/6/15, John Carroll made the following two notations regarding the status of the account which were communicated to Ohannes Korogluyan and Nareg Korogluyan:

"James Tepper left me a voicemail stating that he wants to see if we can work anything out. He said that there was a fire at 2111 Spring Garden St. in January and that he does not have the documents that we sent to him in December. He also claimed that he never received any

statements from us and that he previously tried to mail checks to Amos. His phone number is 267-992-8343."

"James Tepper called and said that there was a fire at 2111 Spring Garden St. that started in the fireplace that destroyed most of the property. He said that there is a disagreement with AllState regarding the amount they are willing to cover and he said that he plans on suing them. He said that he does not have an attorney yet, but that he will be probably be represented by his brother, Ken Tepper. He did not offer to resume payments with us and again claimed that he was not making payments to us because he was not receiving monthly statements. He asked me to email him monthly statements for the past two years. His email address is jbtepper@gmail.com."

On or about 4/6/15 Ohannes Korogluyan instructed John Carroll to provide James Tepper with a reinstatement amount via email, which had been requested by James Tepper on 4/6/15.

6. Identify and describe the method that was used to calculate the amounts of principal and interest allegedly due on the Tepper Loan.

   **RESPONSE:** See Page 2 of the Credit Agreement and Disclosure dated November 27, 2009, a copy of which is attached hereto.

7. Identify and describe all procedures used by Amos to ensure the accuracy of calculation of amounts due on all loans held by Amos.

   **RESPONSE:** **OBJECTION:** Amos Financial, LLC, objects to this interrogatory as being overly burdensome insofar as Amos Financial, LLC holds thousands of loans with varying degrees of complexity required to determine the amounts due thereunder. Providing a detailed an analysis how it ensures the accuracy of each and every loan would overly burdensome.

   **OBJECTION:** Amos Financial, LLC further objects as the interrogatory seeking information that is not relevant to the instant litigation. The instant litigation centers around accuracy of Amos Financial, LLC's, calculation of the monies due on the Tepper Loan. How Amos Financial, LLC, ensures the accuracy of other loans is irrelevant to the instant litigation.

   **RESPONSE:** Without waiving the foregoing Objections loan documents are reviewed to confirm the terms of the agreement and compared to the loan payment history and any loan summaries provided by the lender and/or servicer.

8. Identify and describe the methods used by Amos to collect the loans that Amos deems to be past due and/or in default.

    **RESPONSE: OBJECTION: Amos Financial, LLC, objects to this interrogatory as being overly burdensome insofar as Amos Financial, LLC holds thousands of loans many of which contain specific provisions on how to proceed in the event a default. Providing a detailed analysis of how the Amos Financial, LLC, proceeds in every possible scenario would be overly burdensome.**

    **RESPONSE: Without waiving the foregoing objection, in this case, Amos Financial, LLC, sent letters to the debtors informing them of the arrearage and the amount required to bring the account current. Attempted to contact the debtors telephonically to discuss the arrearage and see if we can arrive at a mutually agreeable plan to bring the account current. If an agreement cannot be reached, the account is referred to local counsel for appropriate legal action.**

9. Identify and describe all procedures used by Amos to ensure that its debt collection methods are in full compliance with all applicable debt collection laws, including the FDCPA.

    **RESPONSE: OBJECTION: Amos Financial LLC, objects to this interrogatory as the Plaintiff does not place a time frame upon the requests and as such the interrogatory is overly broad.**

    **OBJECTION: Amos Financial LLC, further objects to this interrogatory as it seeks information that is not relevant to the instant litigation.**

10. Identify and describe the role of Mr. Nareg Korogluyan within Amos.

    **RESPONSE: Nareg Korogluyan is a member of the management team. He is second in command in management hierarchy. He actively supervises the collection and REO departments of the company.**

11. Identify and describe any problems that Amos has identified and/or documented with Mr. Nareg Korogluyan's job performance, including, but not limited to, any methods employed by Mr. Nareg Korogluyna that were deemed to be violations of an applicable debt collection laws.

    **RESPONSE:    None. Not applicable.**

12. Identify and describe any complaints made by persons contacted by Mr. Nareg Korogluyan concerning his method of debt collection.

    **RESPONSE:** **None, prior to the current litigation.**

13. Identify any other lawsuits against Amos for violation of FDCPA or any other laws related to debt collection.

    **RESPONSE:** **OBJECTION: Amos Financial, LLC, objects to this interrogatory insofar as the Plaintiff does not place a timeframe upon the requests and as such the interrogatory is overly broad.**

14. Identify all experts that Amos has consulted with on preparation for trial or intends to present as an expert witness at trial. For each expert, identify:

    a. The name and address of the expert;
    b. The subject matter on which the expert has consulted with Amos or will testify at trial on behalf of Amos;
    c. The substance of the facts and opinions and/or attached a signed copy of the expert's report to Your answers to the Interrogatories
    d. The current curriculum vitae, including the educational background, filed of expertise, the professional experience, publications, lectures, membership in professional societies, employment experience and court appearances (including citations) of each expert identified in your answers; and

e. The identification of any and all treatises, studies, books, memorandums relied on or referenced by the expert in any way regarding the matters to which the expert has consulted or will testify.

**RESPONSE: The Defendant has not retained an expert witness relative to this matter; however, the Defendant reserved the right to do so. Should the Defendant retain an expert witness relative to this case the answer to this interrogatory will be amended.**

*0000000006407060000000075000710-6%0360%11272009*

10463 00 1765

# CREDIT AGREEMENT AND DISCLOSURE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $150,000.00 | 11-27-2009 | 12-10-2019 | 75000710-6 | 01 | 640706 | 399 | |

References in the boxes above are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** JAMES TEPPER
ALISON TEPPER
2111 SPRING GARDEN ST
PHILADELPHIA, PA 19130

**Lender:** NOVA Bank
Loan Operations
18 East Wynnewood Road
Wynnewood, PA 19096
(877) 322-6511

**CREDIT LIMIT: $150,000.00** **DATE OF AGREEMENT: November 27, 2009**

Introduction. This Credit Agreement and Disclosure ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through NOVA Bank. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean NOVA Bank. You agree to the following terms and conditions:

Promise to Pay. You promise to pay NOVA Bank, or order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement or under the "Mortgage" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

Term. The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until December 10, 2019 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the Commonwealth of Pennsylvania, following the expiration of the right to cancel, the perfection of the Mortgage, the receipt of all required certificates of noncancellation, and the meeting of all of our other conditions and will continue as follows: 120 months. You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

Minimum Payment. Your "Regular Payment" will equal the amount of your accrued FINANCE CHARGES. You will make 119 of these payments. You will then be required to pay the entire balance owing in a single balloon payment. If you make only the minimum payments, you may not repay any of the principal balance by the end of this payment stream. Your payments will be due monthly. Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges. An increase in the ANNUAL PERCENTAGE RATE may increase the amount of your Regular Payment. You agree to pay not less than the Minimum Payment on or before the due date.

Balloon Payment. Your Credit Line Account is payable in full upon maturity in a single balloon payment. You must pay the entire outstanding principal, interest and any other charges then due. Unless otherwise required by applicable law, we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender, which may be us, willing to lend you the money. If you refinance the balloon, you may have to pay some or all of the closing costs normally associated with a new credit line account, even if you obtain refinancing from us.

How Your Payments Are Applied. Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to Finance Charges; then to unpaid principal; then to late charges and other charges; and then to any amounts that exceed your Credit Limit.

Credit Limit. This Agreement covers a revolving line of credit for the principal amount of One Hundred Fifty Thousand & 00/100 Dollars ($150,000.00), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit. Any credit advances in excess of your Credit Limit will not be secured by the Mortgage covering your principal dwelling.

Charges to your Credit Line. We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Mortgage or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Mortgage for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

Credit Advances. After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

Credit Line Checks. Writing a preprinted "NOVA BANK Credit Line Check" that we will supply to you.

Telephone Request. Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your deposit account agreement, you acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.

Requests By Mail. Requesting an advance by mail.

**Requests in Person.** Requesting a credit advance in person at any of our authorized locations.

**Facsimile.** Requesting an advance by facsimile.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor NOVA BANK Credit Line Checks in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the NOVA BANK Credit Line Check.

**Post-dated Checks.** Your NOVA BANK Credit Line Check is post-dated. If a post-dated NOVA BANK Credit Line Check is paid and as a result any other check is returned or not paid, we are not responsible.

**Stolen Checks.** Your NOVA BANK Credit Line Checks have been reported lost or stolen.

**Unauthorized Signatures.** Your NOVA BANK Credit Line Check is not signed by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the NOVA BANK Credit Line Check.

If we pay any NOVA BANK Credit Line Check under these conditions, you must repay us, subject to applicable laws, for the amount of the NOVA BANK Credit Line Check. The NOVA BANK Credit Line Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return NOVA BANK Credit Line Checks along with your periodic statements; however, your use of each NOVA BANK Credit Line Check will be reflected on your periodic statement as a credit advance. We do not "certify" NOVA BANK Credit Line Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

**Credit Line NOVA BANK Credit Line Check, Request By Mail, In Person Request, Facsimile and Telephone Request Limitations.** The following transaction limitations will apply to your Credit Line and the writing of NOVA BANK Credit Line Checks, requesting an advance by mail, requesting an advance in person, accessing by other methods and requesting an advance by telephone.

**Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is $300.00. This means any NOVA BANK Credit Line Check must be written for at least the minimum advance amount.

**Limitation on All Access Devices.** You may not use any access device, whether described above or added in the future, for any illegal or unlawful transaction, and we may decline to authorize any transaction that we believe poses an undue risk of illegality or unlawfulness. Notwithstanding the foregoing, we may collect on any debt arising out of any illegal or unlawful transaction.

**Authorized Signers.** The words "Authorized Signer" on NOVA BANK Credit Line Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost NOVA BANK Credit Line Checks.** If you lose your NOVA BANK Credit Line Checks or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (877) 322-6511. You also can notify us at Lost Credit Line Checks NOVA Bank, 18 East Wynnewood Road, Wynnewood, PA 19096.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: an Open-End Mortgage dated November 27, 2009, to us on real property located in PHILADELPHIA County, Commonwealth of Pennsylvania.

**Property Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Mortgage, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things. Further information concerning these property insurance requirements is set forth in the Mortgage.

**Right of Setoff.** To the extent permitted by applicable law, we reserve a right of setoff in all your accounts with us (whether checking, savings, or some other account), including without limitation, all accounts you may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts, and, at our option, to administratively freeze all such accounts to allow us to protect our charge and setoff rights provided in this paragraph.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "average daily balance" method. To get the average daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us a daily balance. Then, we add up all the daily balances for the statement cycle and divide the total by the number of days in the statement cycle. This gives us the "average daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we multiply by the number of days in the statement cycle. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an independent index which is the prime rate as published in the Wall Street Journal; should two rates appear, the higher of the two rates will be used (the "Index"). We will use the most recent Index value available to us as of the most current publication date of the Wall Street Journal any ANNUAL PERCENTAGE RATE adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Credit Line Account, we may designate a substitute Index

after notice to you. To determine the Periodic Rate that will apply to your account, we take the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect daily. In no event will the corresponding ANNUAL PERCENTAGE RATE be less than 5.490% per annum or more than the lesser of 18.000% or the maximum rate allowed by applicable law. Today the Index is 3.250% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:

Current Rates for the First Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.000% | 5.490% | 0.01504% |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

Conditions Under Which Other Charges May Be Imposed. You agree to pay all the other fees and charges related to your Credit Line as set forth below:

    Returned Items. You may be charged $30.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

    Fee to Close Account. Your Credit Line Account may be charged $50.00 when your account is closed.

    Fee to Stop Payment. Your Credit Line Account may be charged $20.00 when you request a stop payment on your account.

    Overlimit Charge. Your Credit Line Account may be charged $30.00 if you cause your Credit Line Account to go over your Credit Limit. This includes writing a NOVA BANK Credit Line Check in excess of your available balance.

    Charge for Advance Less than Minimum. Your Credit Line Account may be charged $50.00 if you request a credit advance for less than the minimum advance amount disclosed above, whether we decide to honor it or whether we refuse to honor it, unless applicable law requires a lower charge or prohibits any charge.

    Miscellaneous Photocopying. If you request a copy of any document, we may charge your Credit Line Account $2.00 per page for the time it takes us to locate, copy, and mail the document to you. If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges.

    Late Charge. Your payment will be late if it is not received by us within 16 days after the "Payment Due Date" shown on the voucher you receive with each credit advance. If your payment is late we may charge you 5.000% of the unpaid amount of the payment or $20.00, whichever is greater.

    Credit Line Check Printing Charge. Your Credit Line Account may be charged Determined by Vendor.

Lender's Rights. Under this Agreement, we have the following rights:

    Termination and Acceleration. We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

    Suspension or Reduction. In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

    (1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

    (2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

    (3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker.

    (4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement.

    (5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

    (6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

    Change in Terms. We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original Index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum ANNUAL PERCENTAGE RATE under your Credit Line Account is reached.

## CREDIT AGREEMENT AND DISCLOSURE
(Continued)

Loan No: 75000710-6                                                                                                        Page 4

**Collection Costs.** We may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under applicable law, our reasonable attorneys' fees and our legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

**Rate Increase.** In addition to our other rights during termination and acceleration, we may increase the variable ANNUAL PERCENTAGE RATE under this Agreement to 5.000 percentage points over the then applicable ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE will not exceed the maximum rate permitted by applicable law. If we do not increase the ANNUAL PERCENTAGE RATE upon termination or acceleration of your Credit Line Account, it will continue at the variable rate in effect as of the date of termination or acceleration of your Credit Line Account.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all NOVA BANK Credit Line Checks and any other access devices. Any use of NOVA BANK Credit Line Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of NOVA BANK Credit Line Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by You.** If you cancel your right to credit advances under this Agreement, you must notify us in writing at the address shown on your periodic statement or other designated address and return all NOVA BANK Credit Line Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: NOVA Bank, Loan Operations, 18 East Wynnewood Road Wynnewood, PA 19096.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Annual Review.** You agree that you will provide us with a current financial statement, a new credit application, or both, annually, on forms provided by us. Based upon this information we will conduct an annual review of your Credit Line Account. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense. You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Mortgage. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: NOVA Bank Loan Operations 18 East Wynnewood Road Wynnewood, PA 19096.

**Governing Law.** This Agreement will be governed by federal law applicable to us and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Agreement has been accepted by us in the Commonwealth of Pennsylvania.

**Choice of Venue.** If there is a lawsuit, you agree upon our request to submit to the jurisdiction of the courts of Montgomery County, Commonwealth of Pennsylvania.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Mortgage, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Mortgage or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "What you should know about Home Equity Lines of Credit," given with the application.

## CREDIT AGREEMENT AND DISCLOSURE
(Continued)

Loan No: 75000710-6                                                                                                                 Page 5

This Agreement is dated November 27, 2009.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

X _____ (Seal)        X _____ (Seal)
    JAMES TEPPER                                    ALISON TEPPER

**ACCEPTED: NOVA BANK**

By: _____ (Seal)
    Nicole D'Ulisse, AVP, Market Manager

Effective Disbursement Date: 12/2/09

### NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the borrower. The Lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

This notice is not the contract that makes you liable for the debt.

## VERIFICATION

I, BRIAN C. DONEGAN, verify that I am General Counsel for and an Officer of Amos Financial, LLC, and am authorized to execute this Verification on behalf of Amos Financial, LLC. I further verify the statements made in the foregoing document which are within my personal knowledge are true and correct and those which are based on information received from others I believe to be true and correct. I understand that any false statements in the foregoing document are subject to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

BRIAN C. DONEGAN

IN THE UNITES STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| JAMES TEPPER and ALLISON TEPPER | : | | |
| Plaintiffs | : | No. | 15-cv-5834-JCJ |
| | : | | |
| v. | : | | |
| | : | | |
| AMOS FINANCIAL, LLC | : | | |
| Defendant | : | | |

## CERTIFICATE OF SERVICE

I, the undersigned, counsel for Defendant hereby certify that I served a copy of the within Defendant's Responses and Objections to the Plaintiff's First Set of Interrogatories Directed to the Defendant on counsel for the Plaintiff by first class mail on April 29, 2016, to the following address:

> Alan S. Fellheimer, Esq.
> 50 South 16th Street
> Suite 3401
> Philadelphia, PA 19102

Respectfully Submitted,

Dated: April 29, 2016

Erik M. Helbing, Esquire
I.D. No. 203832
1328 Second Avenue
Berwick, PA 18603
(570) 498-5544